## WILLIAM M. CHAUVENET *vs.* THE COMMISSION-ERS OF ANNE ARUNDEL COUNTY.

The second section of the act of 1847, ch. 158, ceding to the United States the site of the Naval Academy at Annapolis, exempts all the personal property of the officers and agents of the federal government residing within the limits of the ceded territory, from " all taxes and assessments" which may be " at any time" imposed by the State. HELD, that by this section, stock of the city of Philadelphia owned by such officers or agents living in said limits, is exempt from taxation. Personal property follows the *situs* of the owner.

The fact that such officers or agents exercised the right of voting at the general elections, previous to the time of levying the tax, cannot affect their right of exemption from taxation under this law.

APPEAL from a decision of the Commissioners of Anne Arundel county.

The legislature, by the act of 1847, ch. 158, entitled, "An act ceding to the United States of America the jurisdiction over the site of the Naval School at Annapolis," enacted as follows:

"Section 1st. Be it enacted by the General Assembly of Maryland, that the jurisdiction and control over the lands owned by the United States, constituting the site of the Naval School at Annapolis, formerly known as Fort Severn, together with the lots recently purchased by the United States, adjoining the said fortification, and the water rights appertaining thereto, be and the same are hereby vested in the United States of America for military and naval purposes, the whole comprehended within the following limits," &c.; "*provided always,* and the cession and jurisdiction aforesaid, are granted

upon the express condition, that this commonwealth shall retain a concurrent jurisdiction with the United States, in and over the said lands and ceded territory, so far as that all civil and such criminal process as may issue under the authority of this State against any person or persons charged with crimes committed without said lands and ceded territory, may be executed therein in the same way and manner as though this cession and consent had never been made and granted, except so far as such process may affect the real and personal property of the United States within the said ceded territory." ·

The second section is set out in full in the opinion of this court, and the third simply provides, that the act shall take effect from its passage.

The appellant was an assistant professor at the naval academy, and as such, an officer or agent of the United States, and lived within the limits of the ceded territory. The assessors of the second assessment district of Anne Arundel county returned as liable to taxation in his hands $10,000 of the stock of the city of Philadelphia, and other personal property, and he thereupon filed his complaint before the commissioners of said county, setting forth the above facts, which were admitted to be true, and claiming exemption under said act from taxation on said stock and all personal property, of every kind, belonging to him within said limits. The assessment was made under the act of 1852, ch. 337, and it was also admitted, that the appellant voted in the city of Annapolis at the general election in November 1851.

The commissioners directed that the property assessed to the appellant, consisting of gold and silver watches, the same being within the limits designated by the act of 1847, ch. 158, be stricken from the assessment, but refused to strike therefrom the $10,000, that not being, in their opinion, exempt by said act, but taxable under the act of 1841, ch. 23, which provides for the assessment of all public loans and stocks owned or held by residents of this State, the appellant being, in their opinion, a resident of this State, within the

said second assessment district, though in the employment of the United States and living within the limits of the ceded territory. From this decision the appellant appealed, under the thirty-second section of the act of 1852, ch. 337.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Nicholas Hammond* for the appellant.

1st. The appellant is exempt from taxation, because he is in the employment of the government of the United States, and resides upon territory over which jurisdiction and control has been ceded by the State of Maryland to the United States. By the eighth section of the first article of the constitution of the United States, Congress has the power to exercise jurisdiction over territories, &c., purchased with the assent of the State in which they lie, and the act of 1847, ch. 158, cedes the site of the Naval School to the United States. Now what is the effect of this cession? Exclusive legislation is equivalent to exclusive jurisdiction. The right to tax is an exercise of sovereignty, and when the person or property is beyond the grasp of any one sovereignty its power falls—its jurisdiction is gone. 2 *Mason*, 60. In this case it was decided, that Fort Adams was within the exclusive jurisdiction of the United States; that the State jurisdiction over it was completely ousted. The same doctrine is held in 3 *Story's Com. on the Cons.*, 1220, 1222. 1 *Kent's Com.*, 429, 430, (6 *Ed.*) 1 *Woodbury and Minot's Rep.*, 76. And see, also, *Opinions of Attorney Generals of the United States*, 469, 1150, referred to in that case. 16 *Pet.*, 435. 3 *Gill*, 14, *Howell vs. State.* The following decisions of the State courts are to the same effect: 8 *Mass.*, 72. 17 *Pick.*, 298. 17 *Johns.*, 225. 1 *Metcalf*, 580.

2nd. The appellant is exempt from taxation, because as an officer or agent of the United States, he is specially exempted under the second section of the act of 1847, ch. 158, which expressly exempts all personal property within the limits of the ceded territory. Now it cannot be denied, but that the

stock in question was personal property, and that it follows the person—its *situs* is the *situs* of the owner. The act of 1841, ch. 23, provides, that such property shall be assessed in the county where the owner resides. But suppose that it does not follow the *situs* of the owner, it is then in *Philadelphia*, and, therefore, beyond the jurisdiction of the tax laws of this State.

*Henry M. Murray* for the appellees.

1st. The United States have only the right to use the property mentioned in the act of 1847, ch. 158, for military and naval purposes, and all jurisdiction not expressly ceded is reserved to the State. This act is not an act of unqualified and unlimited cession of jurisdiction. There are three limitations in it:—1st. The territory cannot be used except for military or naval purposes; 2nd. The civil and criminal process of the State may be served in it; and 3rd. The cession is only to continue so long as the property is used for military and naval purposes. This act is to be construed strictly in the nature of a grant, especially where jurisdiction is concerned. The doctrine on the other side, that exclusive jurisdiction follows exclusive legislation is a dangerous one, and not supported by the authorities. The opinion of Judge Story, in 2 *Mason*, 64, is contradicted by the 3*d vol.* of his *Com.*, 1222, and is not applicable to this case. This doctrine, if true, would be dangerous in the extreme, for Congress might then abolish slavery in the ceded territory, which was never contemplated by the legislature when it passed the act of 1847, ch. 158.

2nd. The first article of the constitution of the United States, section eight, does not contemplate such a place as the Naval School, and the act of Congress, under which the same was purchased, cannot give jurisdiction. 8 *Mass.*, 72.

3rd. The second section of the act of 1847, ch. 158, never intended to, and does not, exempt such property as the stock in question from taxation; it only meant to apply to *personal, visible* property used in the grounds of the Naval School. The tax laws are to be construed favorably to the State. See the case of 12 *G. & J.*, 117, which warrants the idea, that there may be a separation of personal property from the person.

4th. There has been no acceptance by Congress of the cession, which is necessary to give the United States jurisdiction.

*Thomas Donaldson* for the appellant in reply.

1st. The first article, section eight, of the constitution of the United States, gives exclusive jurisdiction to the purchased land—it is not a cession of the territory but of the jurisdiction. The words "needful buildings," used in that section, show that there was no restriction intended. The only question then is, whether a naval academy is needful to the government of the United States? This question does not admit of argument. The United States can only hold the territory under the constitution *exclusively*—they must have exclusive jurisdiction or none at all. The necessary result is, that the State cannot tax the property, for it has no jurisdiction over the persons or property there.

The first proviso of the act of 1847, does not conflict with this exclusive jurisdiction. It is only by the consent of a sovereign power that the process of another sovereign shall come within its limits, and *quoad hoc,* the process of the State is the process of the United States. The same proviso is incorporated into all these acts of cession. 1 *Metcalf,* 580. The right of taxation is a right connected with sovereign power. 3 *Gill,* 14, *Howell vs. State.*

The cases all say, that persons in such places, ceded to the United States, have not the right to vote—they even say, that the *Charlestown Navy Yard* is not within the commonwealth of Massachusetts. In 1 *Woodb'y and Minot,* 76, it is decided, that the laws of Massachusetts, relating to flowage, do not apply to the United States property. They have absolute power over the property ceded; what may be the consequences of such cession it is not for this court to determine, we have nothing to do with that.

The territory can only be received and used by the United States for military purposes, but so long as they hold and use it for this purpose, they must have exclusive jurisdiction. The proviso in the act of 1847, in this particular, may relate to the

termination of power, but not to a qualification of it while it remains.

There is no claim of residence by the appellant in 1852. The fact that he voted in 1851 has nothing to do with the case. If he had voted the very day or the day after the assessment, he would only have been doing an act which he had no right to do, and for which he would be liable to the laws, but this would not subject his property to taxation.

2nd. The second section of the act of 1847 is, of itself, perfectly conclusive on the subject. The only question is, where is the stock in question situated? It is personal property, and it is the theory of all our tax laws and of the law generally, that such property follows the person. But this property can only be in one of two places, either in the *Naval School* or in *Pennsylvania*, and in either case it is exempt.

LE GRAND, C. J., delivered the opinion of this court.

We think this case is free from all difficulty. The second section of the act of 1847, chapter 158, provides, "that the lands over which the jurisdiction is granted by this act, together with all the personal property which is or may be hereafter, within the bounds thereof, belonging to the United States, or to any of its officers or agents, shall be exonerated and discharged from *all taxes* and assessments which may be *at any time* imposed by the authority of this State, so long as the said lands and territories shall remain the property of the United States, and be used for the purposes aforesaid."

It is admitted that the appellant was an officer of the government of the United States at the time of the assessment, and that he resides within the limits of the jurisdiction ceded to the federal government. The property assessed is personal, and, of course, follows the *situs* of the owner.

The fact that the appellant exercised the right of voting at the general election of 1851, cannot effect his rights in this controversy. If he violated the election laws of the State—but on that subject we express no opinion—he was liable to a prosecution for so doing.

The act of 1847 exempts all the personal property of the

officers and agents of the federal government, who reside within the prescribed limits, from *"all taxes and assessments"* which may be *"at any time"* imposed by the authority of this State. Language cannot be more explicit or comprehensive.

For these reasons we differ from the opinion of the commissioners of Anne Arundel county, and in conformity with the requirements of the thirty-second section of the act of 1852, chapter 337, we direct the clerk of this court to send a copy of this opinion to the commissioners of said county.